Proceed with our third argument of the morning, Appeal No. 21-2988, Kelsey Delisle v. McKendree University. Mr. Levy, good morning. Good morning, Your Honors. May it please the Court. I'm Daniel Levy and I represent the appellants Kelsey Delisle and Caitlin Pennington in this putative class action seeking partial reimbursements of tuition and student fees in connection with McKendree University's closure of the campus in connection with the COVID pandemic during the spring 2020 pandemic. Consistent with this Court's opinions in Gossamon v. Loyola University and Hernandez v. Illinois Institute of Technology, we're asking this Court to reverse the dismissal of plaintiff's amended complaints and find that the plaintiffs have adequately stated a claim for an implied contract. Just as Hernandez stated that it found no meaningful distinction between that case and Gossamon, similarly here there are no meaningful distinctions between this case and either Hernandez or Gossamon. I'd like to begin, if I may, with just a brief overview of how and where this case fits in with Gossamon and Hernandez. As this Court is well aware, our briefing followed the Court's decision in Gossamon in which the Court reversed the dismissal of that COVID-19 tuition and fee reimbursement claim and found that the student stated a claim for a breach of an implied contract. Thus relying on this Court's framework and analysis in Gossamon, we argued that Gossamon was controlling and that under its precedent the same result was warranted here. McKendree argues in its response that there were material allegations in Gossamon that weren't present here and then in our reply we address why any such allegations were immaterial and don't warrant a different result. Now although our position has always been that under Gossamon's analysis any such differences in the allegations were immaterial, to the extent that there might have been any question, any such questions were answered by this Court's subsequent opinion in Hernandez. They answered all such questions in our favor in finding there that the plaintiff stated a claim. In fact, it's almost hard to imagine a subsequent opinion more directly addressing McKendree's attempts to distinguish this case from Gossamon than Hernandez has done. I'd like to therefore turn to how Hernandez specifically rejects McKendree's attempts to distinguish Gossamon and confirms that the plaintiffs have here stated a claim. First, as to tuition, there's McKendree's argument about the four sources of the contract that the Court relied on in Gossamon. McKendree devoted much of its argument to asserting that each of the four sources of the implied contract there, specifically the catalog, the course registration process, the parties' course of dealing, and the price differential for tuition for in-person and online programs. They argued that all four of those sources that were addressed in Gossamon must be present. And they argued that our allegations here were insufficient because we didn't allege a price differential. We argued that was too narrow of an interpretation as Gossamon simply found that as a whole, the sources relied on by the students sufficiently supported an implied contract for in-person education in exchange for the tuition and fees. And we therefore argued that it wasn't critical that we didn't allege one of the four factors, the price differential. To the extent that there was any lack of clarity as to whether all four of the sources analyzed in Gossamon must be present, in Hernandez, this Court expressly found that that wasn't the case. This Court stated that the price differential for in-person versus online education was just one of several factors that it relied on in reaching its decision, and it specifically used the phrase that that factor didn't carry dispositive weight. This Court got it right in Hernandez, and as we've argued, the exact same reasoning applies here. Now next, McKendry argues that there were differences in our allegations about the course catalog than the allegations that were present in Gossamon. What mattered in Gossamon was the catalog indicated that many courses would take place in person, not any specific use of the specific term in person as McKendry has argued. The significance was therefore that the catalog created a reasonable inference of in-person instruction for the in-person students, and along with other sources relied on, resulted in a specific promise for in-person services. And the same was true in Hernandez. But not just that, in Hernandez, the Court specifically rejected the argument that McKendry made in terms of the purported lack of significance about the fact that the student catalog differentiated between in-person and online programs. We had argued that the fact that McKendry differentiated between the in-person and online programs in its catalog supported a reasonable inference that it was promising in-person instruction to students enrolled in the separate in-person programs. McKendry argued that if that were the case, Gossamon would have relied on that fact because the same was true in the catalog at issue in Gossamon. But in Hernandez, the Court specifically relied on the fact that the catalog there differentiated between its in-person and online programs. Again, this Court got it right in recognizing that a student catalog that separates or differentiates between its in-person programs and online programs is supporting the existence of a promise for in-person students enrolled in the distinct in-person programs. And yet another question answered in Hernandez that was addressed in our briefs was the significance of the catalog prohibiting in-person students from taking online courses. We had argued that such a prohibition in McKendry's catalog supported an inference that students in the in-person programs were promised in-person instruction. As we argued, what else could be meant when they're not allowed to take more than one online course? In McKendry's case, I believe it was more than one online course during a semester. McKendry argued extensively that we were relying on what it deemed an insufficient inverse inference. Now, there was a similar prohibition in Hernandez prohibiting the in-person students from taking online courses without approval, and this Court specifically relied on it in reaching its decision that the plaintiff plausibly alleged an implied contract for in-person education. As Hernandez correctly recognized, such a prohibition certainly supports a reasonable inference that there's a promise of in-person instruction for students in the in-person programs. If I may briefly address McKendry's response to our Supplemental Authority letter, McKendry provides… Counsel, before you go there, a quick question. With regard to the allegation, plaintiff's allegation that undergraduate students had certain restrictions placed on the number of online classes that can be taken at a particular time period, were there similar restrictions on graduate students? I am not aware of a restriction in the graduate course catalog. As I recall, that particular restriction was just present in the undergraduate catalog. So, I take it that with regard… So, that element on which you relied to suggest that the university was promising in-person instruction is stronger in the undergraduate student context than the graduate student context. I would say that's correct. To the extent it was limited to the undergraduate context, I would agree with that. Okay. Thank you. Can I ask you a question about the reliance on marketing materials? Yes. I have some concern with relying on marketing materials. Yeah. Go ahead. Yeah, and I think in Hernandez, and I agree that's not the primary aspect that we rely on. And if I recall, in Hernandez, the court in Hernandez did in part rely on the marketing materials. It mentioned marketing materials, face-to-face instruction. Representations made on a college or university's website, photos that are displayed, right, as effectively informing whether there's an implied contract. In other words, if there are all kinds of photos… There's all kinds of photographs of academic buildings and dormitories in the student union and the athletic center and all that. Well, implicit in that is a promise that you're going to come here and be able to enjoy those facilities. That line of reasoning to inform whether there's an implied contract seems quite dangerous to me under contract law and antithetical to the way we'd approach it in many, many other contract settings. Never do that with a car, would you? A car purchase? Right, and I understand the concern, and that's not really what we relied on in our allegations. I specify that Hernandez court did reference that, but I believe their language following that, immediately following their discussion of those factors you mentioned, was more importantly, and then it goes on to discuss the way that the catalog distinguished between the in-person instruction and the prohibition of in-person students from taking online courses. So I would agree that that particular aspect… You're not putting much reliance on marketing materials, printed or electronic? Yes, I think that's a fair characterization of our position that it might have some relevance, but relatively very little relative to the other aspects of the catalog that we've discussed. Yeah, I mean, it may be relevant. It's possible that they inform, just as a factual matter, the allegation on a course of conduct that way. Yeah, and the course of conduct is one of the factors we do rely on, but like I said, I don't ultimately disagree that the marketing materials is certainly not one of the primary factors that we're relying on to support the existence of an implied contract, and I understand the court's concern of putting too much weight on any such marketing materials. Just, if I may, briefly turn to McKendree's response to our supplemental authority letter. Initially, there's silence about Hernandez's reliance on the fact that the catalog distinguished between in-person programs and online programs in the catalog, and also they don't address Hernandez's reliance on the prohibition of in-person students from taking online courses. They do argue that our allegations are what they deem far short of Hernandez's, but they don't specify how they fall short. In addition to the aspects of the catalog that we just discussed, and Your Honor, this is where I was referencing that Hernandez did at least briefly address things like the marketing materials, telling students to picture themselves on campus. To the extent that is relevant, we do have those same allegations, and as I previously addressed, we also have the same allegations. You've got pictures in here, and that's why I'm asking the question. So we do, to the extent that was relevant to Hernandez, I don't find that as a meaningful basis to differentiate our allegations, but again, that doesn't change what I said earlier about that not being something that we put a whole lot of weight to in our arguments. But there's just not a material difference in allegations in Hernandez and plaintiffs here, so we don't see a basis for McKendree's claim that our allegations are far short of what was alleged in Hernandez. If I may just briefly address… They are short. I think this is the thinnest of the three. Take, for example, what you say about the registration portal. You have one sentence in your complaint about the registration portal. You say, when students sign up for courses, the defendant represents the location of the course or whether it's online. That's it. Right, and I understand that, and I think… I mean, so you're asking for a lot of inferences to be drawn from really, really sparing factual allegations. I mean, I believe at the motion-to-dismiss stage, that's sufficient. I mean, we plausibly allege that there is a difference, and I believe discovery will help us fill in the gaps. I mean, a lot of this isn't necessarily publicly available and will be necessary to flesh out further in discovery. But I believe it is just one of the several factors that supports an inference that there was a promise of in-person instruction. May I shift your focus a little bit to the unjust enrichment claim? Yes. Do you think that the decision in Gossamon accurately reflects the law of Illinois? I do. We address unjust enrichment in our brief, and I believe Gossamon… Gossamon seems to think that you can plead an unjust enrichment complaint even if it involves a subject that one would expect to have included in the contract. That's correct. Even if it is not. Is that an accurate statement of Illinois law? Yeah, I believe what Gossamon allows is to the extent the scope of the contract is challenged, at least at the pleading stage. Gossamon, as I understand it, does accurately represent or follow Illinois law in allowing the plaintiff to plead unjust enrichment in an alternative to the extent the scope of the contract is in dispute. And in Gossamon, they found that because the plaintiff was challenging that any contract provided for in-person services, what they did there was they allowed the plaintiffs, at least at the pleading stage, to plead unjust enrichment in the alternative. And I believe the same… The operative word being to the extent the scope of the contract is in dispute. Am I right? Correct. I believe that… That's very important. I believe that is important. Can you keep Gossamon within the umbrella, if you want, of the state law? Yes, I believe that is correct and an accurate interpretation of Illinois state law. It looks like I'm running low on time, so I'll go ahead and… Save the rest for rebuttal. Okay, very well. Thank you very much. We'll hear from the University. Thank you, Your Honor, and may it please the Court. The critical portion of Hernandez is where they instructed that not all of the cases alleging similar claims are going to be sufficient to withstand a motion to dismiss. This Court made that clear. And as Judge Scudder pointed out, of the three that this Court has seen thus far, this case presents by far the weakest factual allegations to establish such a claim. And the critical component… And we can go through each of the different factors that are at issue, but the critical fact that's lacking here is any sort of affirmative statement with respect to any course whatsoever. And I heard my friend just say that we're not relying primarily on marketing materials, and I'm happy to address that specific point in greater detail, but that when you take the marketing materials out of it, it's the other allegations that we're making about the course catalog that make it sufficient. The problem with that is that the only allegation about the course catalog, a 308-page document, is two sentences. And it's two sentences that are talking about a restriction on enrollment in a separate type of course. They make no representation, no affirmative representation whatsoever about any specific course. And that's the critical distinguishing characteristic, especially if this Court keeps in mind that it's a federal court sitting in diversity analyzing Illinois law. And that's a critical component of this case too, because what Illinois law says is that in the context of implied contract claims involving universities, we must point to a, quote, identifiable contractual promise, and the plaintiff must illustrate the exact promises the university made to the student. That's what's not present here, and that's why we ask that this Court would affirm the judgment of the district court. If we start looking to the four factors, and we acknowledge that, and we left it open in our briefing. We said we don't know if all four of these factors are required or not. Hernandez answers that and says that they're not. We look at it globally, and we're fine with that. But it's still notable that one of the four, admittedly, is missing, so we're left with analyzing the other three. The first is the course catalog. And as I just discussed, all we have there is that one statement. There are the two sentences, repeated at two spots, that are limiting the number of courses from McKendree's separate online-only degree program that a student could enroll in in a specific semester. First of all, that statement is a prohibition on enrollment. It's not any sort of a promise whatsoever, much less is it a promise about a separate set of courses, courses that aren't even mentioned at all. Contrast that with the allegations that were present in Gossaman and also in Hernandez, but primarily in Gossaman, where there are specific descriptions about individual courses indicating specific room descriptions, whether they had on-campus requirements. And that's important from the implied contract perspective as well, because if you're looking at this as a prospective student, right, and that student goes to the course catalog to determine, if I enroll in this course, what's going to happen? There's specific representations in Gossaman in those course descriptions indicating that there's an in-person component. Those allegations are entirely missing here. If we moved into the registration portal, and I think this is a critical distinction, and my friend mentioned it when he was talking about Hernandez, how it also differentiated, like they claim they do here, between online courses and in-person courses and played out that distinction. But what's important, and I would urge the court to look at the actual complaint from Hernandez, because especially with respect to the registration, there are screenshots, there are paragraphs and paragraphs of allegations about the registration system, including specific allegations that courses are taught via the, quote, traditional instruction method, right? So you have screenshot after screenshot, and again, I think that phrasing is very important, indicating specific courses, again, taught via the traditional instruction method. So what we're left with here, again, is inference and speculation, and that's it. Let me ask you something. So the undergraduate course catalog states undergraduate students attending the Lebanon campus may take only one online course per semester, okay? And you're saying it's unreasonable to infer that that means that other than that one course, the rest of the courses have to be on campus. How is that inference unreasonable? Because you have two choices. You either take online courses or you take no courses at all, or you take courses on campus. They don't have the no courses at all option because they're paying tuition, right? So they're entitled to some coursework. And so if you can only take one online course per semester, doesn't that lead us to conclude that your other two or three or four courses have to be on campus? I have two responses, Your Honor. First, from a factual perspective, it is indicating that they can only take one course from the separate online bank of courses that McKendree maintains. As the earlier allegations in the complaint state, there's a separate online degree program, and they can only take one course from that. There are no representations about the method of instruction for any of the other courses or that McKendree couldn't change one of the courses to being taught online or whatever from that separate set of courses. The second point is even if you get to the point where you say that's okay, that's a reasonable inference then that there are other courses that are taught or that are expected to be taught in person. I think the second component of this is that under the pleading standard, plaintiffs are entitled to reasonable factual inferences. They're not entitled to inferences as to what the legal effect of those factual inferences are. So if here the reasonable inference is that the plaintiff read that statement and thought that a course was going to be delivered in person, I think then you have to look at what Illinois implied contract law requires to state a claim. And the Abrams case tells us that an expression of intention, hope, or desire is not sufficient to state a claim for an implied contract. You have to have specific affirmative promises that that's how the course is going to be delivered. So even if you get to the point where the reasonable factual assumption is that the plaintiff inferred that a course was going to be taught in person, I don't think it creates an identifiable contractual promise under Illinois implied contract law. With that thought in mind, what do we make of the allegations in the complaint that say could fit under the umbrella of a course of past conduct? So course of conduct, and I haven't seen any of the Illinois implied contract cases in the context of these university implied contracts that deal exclusively with course of conduct as providing the basis. So just starting from that point, I think it's difficult to rely exclusively on course of conduct. I think the other problem is that it runs headlong into that same line of authority from Abrams. And if we're going to start turning everything a university does each semester into a contractual obligation that they do exactly the same thing, I appreciate that in courts of appeals arguments, the slippery slope argument is often overdone and hyperbolic. But there is a real concern with it here when we're talking about implied contracts and that we're creating implied contract rights just because of what was done in a prior semester. Mr. Elkway, help me out on this. You feel there's not enough in this complaint. Sure. I think that puts some kind of obligation on you to tell us what is enough. What is enough? I think the place that I would suggest that this court draw the line, and I think that that's what the court is begging for in Hernandez and the other cases, is an affirmative statement about specific courses. I think that's the most realistic place to draw the line. Why? And the reason is because, one, it comports with existing Illinois implied contract law because it goes beyond an intention, hope, or desire. It is making a specific affirmative statement. And it also comports with what we think of as implied contracts, right? The intent to be bound, right, is the phrasing that the Illinois courts use. And it accurately reflects the expectations of the parties because if a student is looking at the document and says, this is the course that I'm enrolling in, and there's a specific statement there about that course indicating that there will be in-person instruction, then you get a lot closer to a reasonable inference that that's a contractual promise because you have that as the basis. How many of those do we need, Mr. Rupp? So I'm looking at another section of the course catalog, Theater 221, Play Production, Costume and Makeup. It says, this course introduces students to theory, technique, and practice of costume design and construction and makeup design and execution. Students may do some hands-on work in campus theater productions. You're saying that that's not enough for a reasonable inference that a portion of that program or that class will be taught in person or on the Lebanon campus? I don't think so. And I think if you look at footnote, then let me try another one. Sure. University Class 102, First-Year Student Access. This course is for first-year Lebanon campus students only. That is not enough to give an inference that students in that class will actually be taking it at the Lebanon campus? I think it would be the students that are enrolled at the Lebanon campus versus those that are enrolled in the online-only program. I think that's accurate. But I don't think that it creates a contractual promise that every session of that course is taught exclusively in person. I don't think that that is an affirmative promise that's there. And also, of course, the full course catalog, there was a hyperlink to it in the complaint. But the allegations themselves in the complaint are two sentences that they take from the course catalog, and that's it. An optimist, Mr. Rault, might say that these cases we're getting right now in educational contracts, it's just a blip on the radar precipitated by COVID. On the other hand, one could be a pessimist and say this is just symptomatic of the new consumer mentality in education, and frankly, the educational industry's view of its own view of profits and what have you. My point is we might be getting a lot of these. Why don't we certify this whole thing over to the folks in the Supreme Court of Illinois and just let them tell us what's required? And in his concurring opinion in Hernandez, that's what Judge Kirsch. And with respect, I think he's wrong. I think we still can do it. That's why I ask. I think that would be a permissible course. And if this Illinois Supreme Court would answer the question of what is required for implied contracts in the educational context specifically, I do think that that would aid this court. But absent that, once we are down this path, I think this court needs to draw a line in terms of where those are going to be cut off. Because I appreciate Your Honor's concern. If we start down this road, what happens when they have a professor change and I wanted to take a course from this professor as opposed to that professor? Or a professor decides to deliver only a portion of their class in person and do some of it online? The way that this court answered that question is footnote six in Gossamen. And that's a critical component of, I think, where this court should go in this determination. And what the court said there was we are not saying that every sentence in a catalog or registration portal creates an independent promise. Rather, it is only the, quote, frequent references to in-person instruction found in both the catalog and the registration portal, end quote, that made the claim sufficient. My point is, does that give you, as university counsel, solace? Somebody's got to give legal advice on the basis of these decisions. And what we have out there now, does this allow university counsel to do their job? I think it is certainly more difficult and a direct answer from the Illinois Supreme Court would aid that. But if this court adheres to what it said in footnote six in Gossamen, that it's repeated frequent references specifically to in-person instruction, I think that suffices for purposes of this case. But you're right, Your Honor, it's a consistent line drawing problem until we get additional guidance from the state court. Because you would still have to say to the university administrators, well, that's what the feds are saying. But, you know, one stroke of the pen and it's a game changer. That's right. That's right, Your Honor. By the state supreme court. That's correct. If I may make one point on the unjust enrichment claim real quick to answer Judge Ripple's question on that. I don't think that Gossamen reflects the accurate statement of the law. And in our briefing, we go through each of those Illinois cases that they cited. If the contract is on the scope of the contract, that's the end of the unjust enrichment claim. But you can answer that question before you even get there. Because my friends concede that if it arises out of the same alleged wrong, the claims rise and fall together. And here they should fall together. And that's why we ask that this court affirm the judgment of the district court. Thank you. Okay. Very well. Thank you, Mr. Rauch. Mr. Levy. Looks like I don't have much time, Your Honor. I'll give you a minute. Go ahead. A few brief points in response. One thing in terms of the catalog, they say there is only the two sentences in the catalog in terms of the prohibition. But that's disregarding the fact that the catalog specifically differentiates between the in-person and online programs. So that's certainly another aspect of the catalog that was important to the court in Hernandez and we believe is important here. Counsel? You know, college education, at least in my view, entails more college experience more than just the instruction. It's the ability to participate in intramural sports and to use a library and to have the writing center there to help you and tutors and whatnot, which is all outlined in the student handbook that the college gives to all the students. Is your claim here limited only to online instruction or are you also incorporating those other, as you would say, references to kind of online services as part of your claim? Right. So our claim isn't limited to just the education itself, but it would also encompass what we say they had bargained for and lost out on after the move to online instruction, including those specific factors that you just mentioned. So we would agree that that is encompassed as part of the claim. So, for example, I'm looking at the student handbook, writing and tutoring center. The writing and tutoring center offers face-to-face and online appointments for a variety of classes. That would be something that you would rely on. Right, because I think that's part of what the in-person students bargained and paid for. In addition to the in-person instruction, it would also encompass those specific factors that you just mentioned. It looks like I'm out of time, so unless anyone has any questions, I will sit down. Okay, Mr. Levy, thank you. Mr. Raup, thanks to you, and the university will take the appeal under advisement. Thank you very much, Your Honors.